The case for argument is 21-1008, Asset Protection and Security v. United States. Mr. Ralston, whenever you're ready. May it please the Court, the solicitation's price requirement here calls for a firm fixed price proposal that under the rules applicable to firm fixed price procurements need be unconditional, non-contingent, unqualified, and complete. This is Judge Dyke. I just have a comment before you begin. I have no idea why your blue brief has this running head at the bottom of the page. It's about confidential protected information to be disclosed only in accordance with the protective order. That's misleading to the public and suggests that this information in this public version of the brief is not available to the public, and the brief has nothing in it that's marked confidential. I just do not understand why that legend appears in the brief. Your Honor, the answer to your question is that under the, as we read it and worked with the parties, that the claims court's protective order effectively requires the opportunity for the parties to review the brief before we declare it not to be essentially protected. In order to comply with the court's filing process and deadlines, we filed it as protected and then distributed the brief for essentially all of the parties to review. As a result, parties reached agreement on what was essentially not protected. The major matter that was protected in the brief is the claims court decision, which is the protected version of the decision that is included in the appendix and which is discussed in the course of our opening brief. Does that answer your question, Your Honor? No, I don't think that having that legend in the public version of the brief is appropriate. Your Honor, with respect, there is ultimately, and we have no difficulty in making the brief public in that respect, have the parties having agreed in that respect. So that I understand the court's point and we certainly will take, if necessary, with the clerk's office, appropriate steps to make sure the public has full access to the brief, obviously dealing with any protected information that is in the claims court decision. Returning, if I may, that assets firm fixed price proposal as set forth in the fully loaded contract line item rates and related matters at appendix 1315 to 1339 provided the exact thing called for by that requirement. The tax exempt certificate assumption concerning state sales taxes, patently a cost and not a price element, did not change that status. The claims court decision to the contrary should therefore be reversed for two reasons. First, it conflates cost and price, essentially finding cost equals price, which it does not, and thus the claims court did not address the necessary causation test of whether the cost assumption at issue here caused assets firm fixed price proposal to be subject to later alteration or future price negotiations. And as I'll discuss in more detail in a moment, this point is a matter of first impression for the court, namely the appropriate test for that causation test. Second, the tax exempt certificate assumption at issue did not fail to comply with the solicitation's price requirement as there was no express requirement therein that sales taxes be covered in the price, nor is there any other material non-price requirement with which the assumption conflicts. Moreover, asset confirmed its price in Amendments 19 and 20, in which it reviewed its price and confirmed its price remained valid even in the wake of the changes that were implemented in Amendments 19 and 20 with respect to the agency's position concerning the tax exempt certificate. Why wasn't the bid fixed after Amendments 19 and 20 were adopted, which specifically, as I read them, permitted the bid to be corrected? Your Honor, I'm sorry, why was it not fixed? Yeah. Why was the problem not fixed, meaning the issue that you're talking about? The record, Your Honor, is deleted from the bid. Your Honor, the record on that issue is silent, but the silence on that issue doesn't matter because the key fact is the record's unequivocal that Asset acknowledged the two Amendments that explicitly stated no tax exempt certificate would be provided and the no tax statement would be provided, it was incorporated in the resulting contract. The record's also unequivocal that Asset proposed firm fixed prices to perform the contract by reaffirming its proposed prices in response to Amendments 19 and 20, and so what you have is an unequivocal record that Asset's subjective intent essentially is irrelevant because as a matter of contract interpretation, it continued to pose a firm fixed price the government was entitled to hold it to for performance of those requirements. This is Judge Hughes. Can you explain to me how you think the record is unequivocal when you continued, even after being told that that statement should be removed, not to remove that statement? You know, I know you're relying on the fact that this is a firm fixed price contract and you were aware of it and you didn't change your price, but you also didn't remove that pricing qualification, and it seems to me that if it had gone forward, the other bidders would have protested and said, you know, your bid was unfairly considered and should have been excluded because of that qualification. This is not a case where this was just a mere oversight. It was pointed out to you at least twice, and there was a GAO protest on this. I mean, do you have any explanation at all why you didn't just fix it? Your Honor, I think the core point is that it was largely immaterial as to price How is it immaterial as to price whether you're going to charge the government for state taxes or not? I understand your argument is we would have just eaten these costs, but that's not apparent from the face of your bid when it says we're going to get a tax exempt certificate from the government. Your Honor, I respectfully submit it is apparent from the bid, and let me go to the specific assumption at issue that the court has raised. Look, I understand your argument. I'm just baffled why, you know, this was not, as I said, not just an oversight or not some kind of, you know, thing that didn't come up. It was a specific part of a protest to the GAO. There were chances to resubmit. This was certainly on your radar, and yet you failed to take out the statement. I don't understand why we should excuse that and conclude that your bid was compliant. Your Honor, if I may, going through the chronology, there was not the opportunity to correct it after the GAO bid, at the GAO protest, I'm sorry. The sequence of events is that Amendments 19 and 20, which were executed by asset after a full review of their pricing in which they confirmed their price in the wake of the changes, then the GAO protest followed based on the evaluation comment as to the contingency issue. The agency took corrective action in which it said it would reassess its evaluation. There was not an opportunity to correct that statement at any time thereafter. Specifically in the 19 and 20, on, for example, page 1281, it specifically says offerors are only allowed to provide updates to Volume 4. And this erroneous statement is in Volume 4, right? Yes, Your Honor. Let me be clear on that. It could have been corrected in the process of responding to 19 and 20. That's correct. It could not have been corrected in response to Amendment Number 21, which is what I thought Judge Hughes was essentially asking about because that was the amendment that occurred after the GAO protest. But I point out with respect to Amendments 19 and 20, and I'll focus on 20 specifically, its purpose was to provide clarification as to ICE's answer for Question 246. It required no action as to state taxes, nor any action as to state tax-exempt certificates. By contrast, the offerors were required in that memo to correct calculations in unit prices, and it allowed, but by contrast did not require, revisions to Volume 4, the price-cost proposals. Asset undertook the review, highly submitted, and I'll finish by saying, did not find that it needed to change its price and, in fact, confirmed its price. And again, I'd underscore the pricing requirement, nor either of the amendments had a specific requirement that state sales taxes be addressed as included or excluded from the price or any bar from accepting that. Thank you, Your Honor. I'll reserve my final minutes for rebuttal. Thank you. Mr. Volk? May it please the Court. Asset failed to submit a proposal that ICE could have accepted for award, and the Court of Federal Claims correctly dismissed the complaint on that basis. ICE requested proposals based on an amended solicitation that said the government would not issue a state tax-exemption certificate. Asset's proposal, by contrast, stated that it was excluding state sales taxes from its proposal pricing based on the government's expressed intent to provide the awardee with a state tax-exemption certificate. So what was your concern? Is there a practical concern here that even though they signed for receipt of those notices, that they would come back later if they got the award and claim that they ought to be able to get the state tax reimbursement? Is that a legitimate kind of concern that it will be at least a source of future litigation? Yes, it most certainly is a legitimate concern. But as far as what was going on there, I don't think that the agency was really thinking about litigation risk in the future. They were just trying to follow the procurement laws. This was a contract formation issue, and the law is clear from this circuit included that if a proposal does not conform to the terms of the solicitation, it cannot be accepted. And so the agency was looking at the proposal, and it did not conform to the terms. Wait, but didn't you change course at something? Because wasn't at the GAO, that was not the government's position, was it? Wasn't the government's position that it was a contingent offer? That's true. So there was a little bit of a difference. There's a difference in the argument as this case went along, but the factual issue is the same. So it's that same problem of the mismatch in that statement and the proposal versus what the amended solicitation said. So at GAO, there was an argument about whether that constituted contingency pricing, and those arguments continued to show up in Assets Brief. But when this came to the Court of Federal Claims after GAO denied that protest on the merits, we said, well, the problem is really even more basic than that. The problem is that the proposal says one thing and the solicitation says something else. Let me just ask you another question just for clarification because you did bring this up in the brief. My understanding from what your position is is that even if it's not compliant, the government has the discretion to do a best value analysis, and then if it somehow is the best value, to go back to the person and say fix it. Is that the way it works? And if so, is that what the government always does in these circumstances in order to assure that they will get the best value offer? So, Your Honor, to address that, the agency did have the option. When an agency gets a proposal that's not acceptable, the agency can, in a situation like this, go through another round of what's called discussions. And so discussions are a procedure under FAR Part 15 where the agency can tell all the offerors, here are the deficiencies and significant weaknesses, if any, in your proposal, and then the agency invites everyone to submit a new revised proposal. So the agency always has that opportunity if it wants to, but it definitely does not have to do that. An agency doesn't have to try to force everyone in the procurement to try to submit an acceptable proposal. If the agency doesn't decide to go through another round of the discussions, which it didn't do here, and it has a proposal that is not acceptable, then the only option then is to reject that proposal. Maybe I'm confusing this with another case, but didn't you do a best value analysis in this case? Right. So the agency did a best value analysis and determined that ACIMA was the best value. And in that best value analysis, it is correct that while it noted that assets proposal was deficient and couldn't be awarded on anyway, it still did include in its analysis how assets proposal fit in with the others. But there's nothing irrational about doing that. I didn't suggest it was irrational. I didn't use that word. I don't think it's irrational. My question is, what if ACIMA had come up on top on that best value? Is it clear that the government would have necessarily picked asset protection? Or go back to them and say, go fix it, and we'll pick you if you fix it? No, it's not clear that the government would have done that, and there wouldn't have been any obligation to do that. Had that happened, the agency would have had a discretionary choice. The agency could have opened up another round of discussions. And so if it did that, there would be no guarantee that assets proposal would be selected if it fixed that deficiency because everyone gets another opportunity to change their whole proposal. So there's no guarantee that the analysis would come out the same. But so the agency certainly had that opportunity, or hypothetically would have had that opportunity if it wanted to get another round of proposals and give asset a notice of deficiency and an opportunity to submit a new proposal. But there's absolutely no requirement that it do that. So the agency still definitely could have decided, even if hypothetically assets proposal would have been the best value absent the deficiency. The agency absolutely could have nonetheless decided, well, it's deficient. We're taking the other one anyway. And, in fact, that wouldn't have been an unusual outcome if that hypothetical existed here, given that the proposals were close. They were close in a lot of factors. Are there guidelines about when you would pick them and when you didn't? I don't want to suggest certainly enough that there was something arbitrary about what you do, but is this just, you know, based on the facts and circumstances of every case and a million other factors you just make a reasonable decision? That's right. That's right. It's a matter of contracting officer discretion. And so the standard just becomes a matter of whether the government acted irrationally, you know, absent some violation of a particular regulation or statute. These protests are just questions of whether there was a rational basis for the decisions that the contracting officer made. And so here in that situation, asset would have to show that the government acted irrationally. And, you know, it, of course, never got to that merits review because looking just at the plain face of the proposal it submitted and the terms of the solicitation, it didn't matter what the agency did because we never got to the merits of the agency's decision making because the proposal on its face could not have been awarded on from the outset. From the moment it was submitted it was deficient and it would have been unlawful to have been accepted. And so for that reason, asset had no chance of being awarded the contract and it was therefore doesn't have standing to say the agency's decision making and choosing the other offeror is wrong because asset couldn't have been awarded regardless. Asset argues that all it had to do was acknowledge the solicitation amendments and that's it. But acknowledging solicitation amendments is not the same as revising a proposal. If an amendment changes the solicitation such that the proposal has to be revised, the offeror has to actually submit a revised proposal that conforms to the solicitation. Asset didn't do that here. Asset argues about contingency pricing but that doesn't confront the holding of the Court of Federal Claims that in the decision that asset is challenging. The Court of Federal Claims decided correctly that asset's proposal didn't conform to the solicitation and it properly dismissed the complaint on that basis. This Court should affirm. Thank you. Mr. Dungan, you have five minutes. Thank you, Your Honor. We support the government's argument regarding lack of standing but we rise to support an alternative basis for affirming the decision below that the appellant's bid protest is untimely and therefore waived under this Court's decisions in blue and gold fleet v. United States and its progeny as recently revalidated by this Court in the insertion corporation v. United States. I'm sorry. This is Judge Prowse. You would only advocate reaching the alternative if we couldn't affirm on the basis to which the government is asserting its claim, right? Absolutely. We're in full agreement with the government and its positions. We're just providing an alternative basis should the Court so choose. Asset Security's bid protest relies on two interpretations of the solicitation as amended that either directly conflict with the language of the solicitation or at best rely on patent ambiguities. Either renders the bid protest untimely. The solicitation originally allowed proposing pricing contingencies and indicated initially that the agency would issue a tax exemption certificate for Arizona's 4.5% business tax. That was amended in Amendment 17 which prohibited pricing contingencies. I simply do not understand your argument which to me doesn't make sense. What is it? They're not challenging the solicitation. They're saying that any error in our bid was basically harmless because it doesn't affect the price. Your Honor, I would concede only that the appellant's bid protest is not styled in a manner which on its face would challenge a solicitation term. However, as we sign our brief, their argument relies on an interpretation of the solicitation that either directly conflicts with its plain language or at best to the appellant relies on a patent ambiguity. Indeed, in Blue and Gold Fleet, that case relied on a patent ambiguity. In Blue and Gold Fleet, the protesters styled its protest as a challenge of the evaluation. Their argument in that case was that the agency failed to evaluate the sufficiency of proposed wages to comply with the prevailing wage requirements of the Service Contract Act. The court in Blue and Gold Fleet looked at the logical underpinnings of that argument and it determined that that argument relied on a patent ambiguity, made patent because of the protesters' knowledge of the government's prior interpretations and that based on that, the bid protest should be characterized as one that challenges the solicitation terms. The same logic holds here. The first either direct conflict or patent ambiguity that the asset relies upon is that it was allowed to state that the agency intended to issue a 4.5% tax when in fact it did not under the clear terms of Amendment 19 and 20. The second patent ambiguity that their protest relies upon is that its belief that the agency changed its mind about the proposal no longer being ineligible. That directly conflicted with the agency's prior finding in its second award decision as acknowledged by the protester appellant in the GAO proceeding. The Corrective Action Amendment did not state at Appendix 1293, it did not state that the agency no longer believed the proposal was ineligible for that reason. Rather, it merely stated that it would reevaluate because doing so was in the agency's best interest. And for those reasons, Your Honor, we would submit that if the court chooses not to affirm on the basis stated in the opinion below, that it should affirm on an alternative basis. Hold on time, please. Thank you. Mr. Raulston. Thank you, Your Honor. First, as to the government's arguments, in response to your question concerning what the concern was at the agency, the government responded that, yes, part of it was that there would be a comeback later, the potential for further litigation, so to speak, or, in essence, a future alteration of the price or a future negotiation. That is exactly the price condition point discussed in our briefs and is really at the core of that. And it's why I noted that this is a case of first impression because that point is very fundamental with respect to federal procurement. And, therefore, the court needs to draw that distinction between a price condition, as was indicated in that answer, versus a cost or price assumption that does not impact the price. The trial court effectively assumed that it would impact it and skipped over the price condition test and used its per se impact analysis instead. And that would impose, if that were followed, essentially blanket liability on offerors for accuracy of their price assumption and establish new bid protest grounds on that basis. By contrast, were the court to adopt a claims court analysis in Harmonia Holdings v. U.S., discussed in our blue brief at 34, the GAO decision in this case at Appendix 1468 and the well-established line of price condition decisions by GAO, which are available Appendix 2211 to 2214, it would avoid those adverse results. Second, there was a discussion concerning non-contingent issue at GAO versus conditional pricing. And I understand, as I recall, a comment was made that essentially involved similar principles or concepts. They're very different. The first is a very narrow issue concerning FAR 52222-43B, and it has never been followed thereafter. Conditional pricing is the much broader issue. It's the one I've just mentioned of first impression. And into that point, following on another question of why was asset in the competitive range considered in its proposal of best value determination, it's because apparently the agency saw no difficulty of there being a non-conformity of assets price proposal with the price requirement. And that's because the agency, of course, knows the fundamental rule that in a firm-fixed price procurement, cost does not impact price unless it conditions it. And I note our Rule 28J filing with respect to the Pacific Coast decision of last Friday, which goes to really exactly that point, because throughout the procurement, the risk wholly is borne by the contractor, not by the government. Thus, essentially, Pacific Coast is consistent with and supports our decision that the price would not have been impacted by the tax exempt certificate statement. Finally, on the issue where the government says it was inconsistent and could not result in an agreement, the government's argument ignores there's no expressed requirement in the cessation's price requirement, nor in Amendments 19 or 20, that sales taxes be included, excluded, considered, or even addressed. And the government's brief at 20 and 21 acknowledges those very points. All they changed was the government's answer with respect to tax-exempt certificates, which put it back to the status quo ante, nor is there any expressed prohibition of relying on an incorrect cost assumption or from ICE accepting one. Briefly on the blue and gold issues, to Judge Dykes' point, assets protests did not challenge the amendments as ambiguous or that the solicitation is defective, which, of course, are predicates to the blue and gold challenge. Nor does blue and gold apply to protests for corrective action. It is also self-evident that Amendments 19 and 20, issued in May of 2019, would never put asset on notice of ICE's August 2019 contingency pricing position that asset's proposal supposedly materially violated the price requirement. Finally, there's no requirement to protest ICE's Amendment 21, November 2019, because at that point the ICE corrective action was still continuing and a new evaluation award decision had not yet been issued at that point. I hear my time is up. Thank you, Your Honor. Thank you both parties and the cases submitted. That concludes our proceeding for this morning. The Honorable Court is adjourned until this afternoon at 2 p.m.